IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| ANNIE M. RHOLETTER, | ) | CIVIL ACTION NO. 9:12-2341-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Plaintiff filed the complaint in this action, pro se, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on February 27, 2009, alleging disability as of October 16, 2008 due to arthritis; pain in her back, feet, hands, leg and hips; high blood pressure; neck, arm, hip and shoulder injury; depression; and nerve damage in her arm. (R.pp. 139, 158). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on August 20, 2010.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.



(R.pp. 54-97). The ALJ thereafter issued a partially favorable decision on September 23, 2010, in which he found that Plaintiff was not disabled prior to January 28, 2010, but was disabled after that date. (R.pp. 15-47).[2] The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits beginning October 16, 2008. The Commissioner contends that the decision to deny benefits prior to January 28, 2010 is supported by substantial evidence, and that Plaintiff was properly found not to be disabled prior to that date.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial

---

[2]Plaintiff had a previous claim for DIB that was denied on January 8, 2002. (R.p. 155). Plaintiff thereafter engaged in gainful employment. In her current application, Plaintiff alleges her disability is the result of an on the job injury which occurred on July 22, 2008, although her claimed disability onset date is not until October 16, 2008 because her employer paid her a full salary until that time. (R.pp. 59, 64, 153, 176-183). Plaintiff was last insured for purposes of eligibility for DIB benefits on December 31, 2012. (R.p. 155). Therefore, in order to obtain DIB, Plaintiff had to show that her impairments were of a disabling severity by that date. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.101 (2009).



evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

<u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws v. Celebrezze</u>, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. <u>Laws</u>, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-two (42) years old when she alleges she became disabled in her current application, has a high school equivalency certificate and past relevant work experience as a school custodian. (R.pp. 42, 82, 101, 168-169). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although



as of October 16, 2008 Plaintiff did suffer from the "severe" impairments[3] of cervical degenerative disc disease and facet hypertrophy, partial suprapinatus tear versus tendinopathy of the upper back and neck, degenerative disc disease of the lumbar spine, headaches, ulnar neuropathy of the left elbow, left subacromial joint bursitis, and obesity, rendering her unable to perform her past relevant work, she nevertheless retained the residual functional capacity (RFC) to perform a reduced range of light work[4] through January 28, 2010, and was therefore not entitled to disability benefits prior to that date.  However, beginning January 28, 2010, the ALJ concluded that Plaintiff additionally suffered from severe depression and anxiety, and that the severity of Plaintiff's impairments at that time rendered her disabled and entitled to DIB.  (R.pp. 18, 21, 43, 46).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly considering Plaintiff's subjective complaints as to the extent of her pain and limitations; by failing to accord adequate weight to the expert opinion of Plaintiff's treating physician, Dr. James Walker; by failing to obtain a medical advisor to determine the onset date of Plaintiff's mental impairments; by failing to consider the impact of Plaintiff's obesity on her ability to work; by failing to consider the side effects of Plaintiff's medications on her ability to work; and by failing to give proper consideration to the testimony of the Vocational Expert at the hearing.  However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.

## I.

First, the ALJ's decision does not reflect that he improperly evaluated Plaintiff's subjective testimony as to the extent of her pain and limitation. While Plaintiff correctly notes that SSR 96-7p requires the ALJ to consider a variety of factors when evaluating a claimant's credibility, including not just the claimant's own statements as to the extent of his or her limitations but also medical and laboratory findings, diagnoses, and daily activities, she herself concedes in her brief that the ALJ engaged in a very thorough discussion and analysis of not just her testimony, but also her medical records and history.[5]

With respect to the subjective evidence, the ALJ noted Plaintiff's statements in a function report completed around September 30, 2009, her disability report from July 2009, reports of Plaintiff's contact with state agency representatives concerning her claims, as well as her testimony from the hearing. (R.pp. 21-25); see also (R.pp. 184-191, 201-212, 217-219). However, after consideration of the evidence the ALJ determined that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff alleged, her statements concerning the intensity, persistence and limiting effects of these symptoms was not credible prior to January 28, 2010, to the extent they were inconsistent with the RFC assigned in the decision. (R.p. 25). In reaching this conclusion, the ALJ cited to the voluminous medical records in the file, noted the results of MRI's and x-rays showing generally mild to moderate findings, how

---

[5]Indeed, the ALJ's decision in this case is 33 single spaced typed pages, one of the longest, if not the longest, administrative decision ever reviewed by this Court in a Social Security case.



notwithstanding Plaintiff's claims of incapacitating back and left lower extremity pain she was found to have 5/5 (full) motor strength in each muscle group of both the upper and lower extremities bilaterally and a normal gait, that conservative treatment had been recommended for many of her complaints, that Plaintiff's complaints were at times inconsistent, that even following her accident in July 2008 Plaintiff herself indicated that her pain medications "work[ed] well" and she continued to work full time, that on those occasions when Plaintiff received steroid injections she was provided some relief from her symptoms, the Plaintiff's reports of the extent of her pain and limitations were sometimes inconsistent depending on the physician who was seeing her over the same general time period, that state agency physicians (after a review of Plaintiff's medical records) had opined that Plaintiff was capable of performing light work with certain restrictions consistent with the ALJ's RFC determination, as well as that Plaintiff engaged in such activities as walking, cooking simple meals, going out to eat, shopping, watching tv and movies, reading, and performed household chores such as doing the laundry and cleaning, all of which was inconsistent with the extent of limitations alleged. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[conservative treatment not consistent with allegations of disability]; Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that



claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities].

The ALJ further noted that it was not until January 28, 2010 that Plaintiff began mental health treatment, and that prior to that time the record contains little evidence relating to depression or anxiety, with Plaintiff's medical records generally indicating that Plaintiff was normal psychiatrically and neurologically, that Plaintiff did not have a severe mental impairment, and was capable of working a full day without significant interruptions. See generally, (R.pp. 18-20, 25-37, 177, 297-315, 317, 377-379, 447). Ables v. Astrue, No. 10-3203, 2012 WL 967355 at * 11 (D.S.C. Mar. 21, 2012)["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96-7 p.]; Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"].

While Plaintiff contends that the ALJ required objective findings to substantiate the severity of her claims of pain, that is not what the ALJ required in his decision. To the contrary, the ALJ specifically acknowledged that he had to evaluate the disabling effects of Plaintiff's pain even where its intensity or severity was shown only by subjective evidence. (R.p. 37). Nevertheless, the ALJ noted that objective medical evidence is also important and should be obtained and considered, and further noted that "several factors *unrelated* to the presence or absence of objective evidence" detracted from Plaintiff's credibility, including indications that Plaintiff was concerned that she may only be able to work at a job making less money than she had previously made, indications in the



record where Plaintiff had a tendency to exaggerate her symptoms, and inconsistencies between her statements and what the objective medical evidence showed. (R.pp. 37-38). [emphasis added]. see Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; Anderson, 344 F.3d at 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints].

While Plaintiff is correct that the medical records show that she continued to report the same symptoms over the years, it is important to note that the ALJ did not find that Plaintiff did not have a serious medical condition. Rather, the ALJ determined that Plaintiff had several severe impairments including degenerative disc disease and other conditions which could cause her pain and limit her ability to perform gainful work activity. (R.p. 18). However, he also determined that these conditions were not totally disabling prior to January 28, 2010, by which time medical evidence showed that her depression and anxiety also became severe impairments, and that Plaintiff's testimony as to the disabling effect of her impairments prior to that date was not credible for the reasons stated. Plaintiff simply disagrees with the conclusions the ALJ reached. But see Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; see also Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. As discussed hereinabove, the decision reflects that the ALJ properly reviewed Plaintiff's subjective testimony from the hearing



and found that her statements were not credible and were not supported by the objective evidence of record. There is no error presented in this analysis. <u>Mickles v. Shalala</u>, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

When objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; <u>see</u> SSR 96-7p, 1996 WL 374186, at * 1 (1996); and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony as to the extent of her pain and limitation. <u>Jolley v. Weinberger</u>, 537 F.2d at 1181 [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; <u>Patterson v. Astrue</u>, No. 08-1065, 2009 WL 1586941 at * 7 (D.S.C. June 4, 2009)["When objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight. SSR 96-7p, 1996 WL 374186 at * 1 (1996)."]. This argument is therefore without merit. <u>Clarke v. Bowen</u>, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"].

## II.

Dr. James Walker is Plaintiff's family physician. As a treating physician, Dr. Walker's opinion as to Plaintiff's condition and functional limitations would ordinarily be accorded great weight. <u>See</u> <u>Craig</u>, 76 F.3d at 589-590 [noting importance of treating physician opinions]. However, the opinions of a treating physician are not entitled to great weight where they are contradicted by the physician's own treatment notes, or by other evidence. <u>See</u> <u>Krogmeier v.</u>



Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)]; Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Burch v. Apfel, 9 Fed.Appx. 255 (4th Cir. 2001) [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]. That is what the ALJ concluded in this case, finding that Dr. Walker's assessment that Plaintiff was disabled and unable to lift, push or pull objects over ten pounds was unsupported by either his own treatment records or the objective medical evidence contained in the records from Plaintiff's other physicians. (R.p. 39). The undersigned can find no reversible error in the ALJ's decision to discount Dr. Walker's opinion as to the severity of Plaintiff's condition. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

   Dr. Walker's treatment notes include results of an office visit on February 11, 2008 (eight months before her alleged disability onset date)[6] where Plaintiff was complaining of chest pain and numbness in her left arm. Plaintiff also indicated that she had headaches with accompanying general weakness and stress. An EKG showed regular sinus rhythm with no acute changes, while Plaintiff's spine showed a fairly good range of motion with complaints of pain on compression of the left transverse spinous processes. Plaintiff was diagnosed with left cervical radiculopathy versus

---

 [6]There are also some earlier treatment notes from Dr. Walker in the record that have not been reviewed hereinabove, as they are from a time period well before Plaintiff's disability onset date. See (R.pp. 449-463).



cardiac pain, was prescribed some medications, and sent home. (R.pp. 333-334). Plaintiff returned to see Dr. Walker on March 4, 2008 complaining of "face tingling" and numbness in her left arm which she described as being a 10 on a 10 point scale. An EKG again showed regular sinus rhythm, although it did contain unspecified changes from the previous EKG which Dr. Walker indicated could possibly be global ischemia. It was also noted that Plaintiff had had a stress test the previous month that was normal. Plaintiff was referred to Dr. Brett McLaurin for a work up. (R.pp. 330-331).

Plaintiff returned on March 7, 2008 complaining that she was "still having tremors", and Dr. Walker referred her for a CT scan of the head and an EEG. (R.pp. 328-329). Plaintiff thereafter had a CT scan of her head performed on March 13, 2008, which was normal. (R.p. 336). Plaintiff then returned to see Dr. Walker on March 27, 2008, at which time he noted that Plaintiff's EEG as well as her CT scan of the head were both normal, as was an echocardiogram. He also noted at that time that Plaintiff "seem[ed] to be doing fairly well". He assessed Plaintiff with a possible peripheral neuropathy or stress reaction and inflammatory arthritis, and prescribed some medications. (R.pp. 326-327). On June 19, 2008, Plaintiff returned to see Dr. Walker complaining of neck and shoulder pain which she claimed she had been having for over a year. On examination, however, Plaintiff had "very good range of motion of the cervical spine", while her lumbar spine had "fairly good range of motion as well". Plaintiff was prescribed some medications and sent home. (R.pp. 324-325).

On Plaintiff's visit to Dr. Walker on September 16, 2008, she noted her July 2008 accident, where she said she had been "knocked down on [her] left arm & shoulder [and] hit [in the] head". Plaintiff complained of neck pain and left shoulder pain, and on examination exhibited decreased range of motion of the cervical spine, specifically with respect to her lateral flexion and

11



rotation, although neurologically she was "intact" and there were no other abnormalities noted. Plaintiff was diagnosed with cervical disc disease with some left cervical radiculopathy, was provided some medications, and sent home. (R.pp. 321-322). Dr. Walker also gave Plaintiff a note indicating that she should engage in no pushing, lifting or pulling. (R.p. 467). On December 29, 2008, Plaintiff was back for a "recheck". On examination her extremities were found to be within normal limits, she was "intact" neurologically, and there was no evidence of any sort of inflammatory joint disease. Nonetheless, Dr. Walker noted that Plaintiff was "dragging" her left leg when she walked, and that she had atrophy and weakness in the left hand grip. Dr. Walker diagnosed Plaintiff with muscle weakness, rhinosinusitis, and a sleep disorder. (R.pp. 318-319).

On February 12, 2009, Plaintiff was back complaining of arthritis and back pain, as well as hair loss. While Dr. Walker found no evidence of radiculopathy, Plaintiff exhibited neck pain with full extension, rotation, and lateral flexion. He diagnosed Plaintiff with cervical disc disease, degenerative, as well as with hair loss, provided her with some medications, and told her to come back in six months. (R.pp. 316-317). That same date Dr. Walker completed a long term disability benefits form for an insurance company in which he opined that Plaintiff should stop work as of October 2008 due to cervical disease, that Plaintiff could frequently lift only ten pounds, could only walk/stand as well as sit for one hour each at a time, for a total of three hours each in an eight hour work day, and that Plaintiff could never bend/stoop or reach, and only occasionally grasp. (R.pp. 468-469).

On May 14, 2009 Plaintiff returned to see Dr. Walker, stating that she needed a refill of her medications and that she wanted to lose some weight. Plaintiff also continued to complain of hair loss. On examination Plaintiff's extremities were within normal limits, and she was



neurologically intact.  He diagnosed Plaintiff with an estrogen deficiency, with being over weight with a need for weight control, hair loss, HTN,[7] and a general anxiety disorder, and again prescribed some medications.  (R.pp. 389-390).  On May 21, 2009, Dr. Walker wrote Plaintiff a note indicating that she should not be required to do any lifting, pushing or pulling or ten pounds.  (R.p. 350).  On July 30, 2009, Plaintiff presented complaining of a back, neck and arm injury, as well as a possible seizure.[8]  A physical examination was within normal limits except for decreased abduction with some possible impingement in the left shoulder.  Plaintiff complained of pain with movement all about her left shoulder, which Dr. Walker diagnosed as left shoulder possible impingement syndrome.  He also diagnosed Plaintiff with a possible left ankle osteoarthritis, post traumatic. Plaintiff was referred for "plain films" of her left ankle and an MRI of her left shoulder.  (R.p. 387-388).

      Plaintiff's left shoulder MRI was performed on August 3, 2009, which revealed a partial tear versus tendinopathy of the supra spinatus, a "tiny" subchondral cyst in the superior and lateral humeral head which could be associated with rotator cuff pathology, a "tiny" amount of subacromial bursitis, and "mild" osteoarthritis of the AC joint with a small joint effusion.  (R.p. 394).  The radiology report on Plaintiff's left ankle showed only mild degenerative changes, with normal bone mineral density and no evidence of a fracture or lesion.  (R.p. 396).  On September 28, 2009, Plaintiff was seen for a variety of complaints, and was diagnosed with herpes, sleep disorder,

---

[7]HTN is an abbreviation for hypertension.
http://www.medilexicon.com/medicaldictionary.php?t=41666, 2006.

[8]This "seizure" was noted to be a "spell [Plaintiff] described as a tingling of the scalp but no loss of consciousness.  (R.p. 388).



HTN, and rosea. (R.pp. 447-448). On October 1, 2009 Plaintiff's chief complaint was an abnormal EKG. However, antother EKG performed that date showed a regular sinus rhythm, with everything being "pretty well within normal limits". (R.pp. 445-446). On November 19, 2009, Plaintiff presented complaining of "flu like" symptoms, along with depression, stress, anxiety, and "pain all over". However, a physical examination was generally unremarkable, with only some throat drainage being noted. Her extremities were within normal limits, and neurologically she was intact. (R.pp. 441-442).

On December 31, 2009, Plaintiff was seen for a follow up, and was noted to be "doing fairly well" but having some numbness in both feet. On examination both feet had a positive tineal sign, with the remainder of Plaintiff's examination being well within normal limits. (R.pp. 439-440). On February 15, 2010, Plaintiff presented with complaints of a sore neck and weight gain. On examination Plaintiff exhibited only a fair range of motion with decreased non-reflexion and decreased rotation with the left lateral flexion resulting in pain down into her shoulder, although her left shoulder had fairly good range of motion with no evidence of subluxation of the shoulder, and no evidence of rotator cuff pathology. Dr. Walker diagnosed Plaintiff with left cervical radiculopathy and hypertension, and it was noted that she had an appointment to see an orthopedist. (R.pp. 436-437). On May 10, 2010, Plaintiff complained of shoulder and back pain and was seen apparently as a follow up to some left shoulder surgery.[9] Dr. Walker noted that Plaintiff was doing fairly well, had no new problems, and no new complaints. On examination Plaintiff had some tenderness over the left shoulder, with the remainder of her examination being normal. (R.pp. 433-

---

[9]Plaintiff had actually had surgery on her left elbow in October 2009. (R.pp. 422-424). Plaintiff did well following surgery. (R.p. 421).



434).

On August 11, 2010, Dr. Walker filled out a Medical Source Statement wherein he opined that Plaintiff could only occasionally lift up to ten pounds, could only stand/walk for one hour in an eight hour work day [best as can be determined - largely illegible], and only thirty minutes without interruption, and that she could sit for only five hours in an eight hour work day, only one hour without interruption. Dr. Walker further opined that Plaintiff could never climb or crawl, rarely stoop or kneel, and only occasionally balance. Plaintiff would also only rarely be able to reach, push or pull, only occasionally handle, but could frequently feel, and constantly see, hear and speak. Plaintiff could also rarely or never tolerate exposure to various hazardous conditions. (R.pp. 522-525).

The ALJ reviewed Dr. Walker's medical records in some detail, but found that his opinion that Plaintiff was essentially disabled was entitled to little weight, noting that the notes he gave to Plaintiff indicating an inability to lift, push or pull provided no explanation, subjectively or objectively, for his conclusions. The ALJ also pointed out that Dr. Walker's note to the Plaintiff indicating that Plaintiff could not lift, push or pull objects over ten pounds was issued only one week after an examination had shown that Plaintiff's extremities were within normal limits and she was neurologically intact. (R.pp. 40, 350, 390). With respect to the medical source statement of August 11, 2010, the ALJ noted that Dr. Walker again cited to no clinical findings supporting his conclusions, nor did the disability form he completed for the insurance company provide any support for his conclusions, other than his one statement that Plaintiff had clinical signs relating to rheumatoid nodules of the hands. The ALJ further noted that in none of his four statements indicating that Plaintiff was disabled did Dr. Walker offer any clinical support for Plaintiff's most



often repeated symptoms relating to neck, left shoulder, left arm, low back, or headache complaints. (R.p. 39); see (R.pp. 350, 467-470, 522-525). The ALJ further noted that Dr. Walker's own medical treatment records generally reflect relatively normal physical examinations, and also contain inconsistencies such as where Plaintiff was observed to be dragging her left leg while walking even while Dr. Walker's examination notes from that day reflect that Plaintiff was neurologically intact, that her extremities were normal, and that there was no evidence of any sort of inflammatory joint disease. (R.pp. 39, 318-319). Burch, 9 Fed.Appx. 255 [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.].

In addition to the inconsistencies in Dr. Walker's own records, the ALJ further noted that Dr. Walker's opinions were inconsistent with the other medical evidence of record. For example, the ALJ noted that no other physician had ever recorded that Plaintiff dragged her left leg while walking, and that only one month prior to Dr. Walker's statement to the insurance carrier that Plaintiff's impairments were of a disabling severity, neurologist Dr. Dean Reeves had indicated that a neurologic work up for the Plaintiff was not even necessary. The ALJ further noted various x-rays, MRI's, and nerve conduction studies which contradict Dr. Walker's opinion, as well as the opinions of the state agency physicians that Plaintiff was capable of performing light work with certain restrictions. (R.pp. 40-41, 290, 369-375, 411-418). Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].



As noted, the ALJ reviewed this medical record as well as Plaintiff's subjective testimony and found that Dr. Walker's assessment of Plaintiff's RFC was not consistent with the other substantial evidence of record or with even his own treatment notes, and while conceding that the medical evidence established that Plaintiff had been treated for a variety of symptoms associated with her alleged impairments, found that her complaints were never fully substantiated by the evidence in the record as a whole.  Nonetheless, the ALJ did find that Plaintiff had severe impairments that, while not disabling (prior to January 28, 2010), did restrict her to the performance of light work requiring only frequent pushing/pulling, handling, fingering, and feeling with the left upper extremity, but no limitation with her right dominate upper extremity; never climbing ladders, ropes, and scaffolds; only occasionally climbing ramps and stairs; balancing, kneeling, stooping, crouching or crawling; with the avoidance of even moderate exposure to hazards.  (R.p. 21).  Again, the undersigned can discern no reversible error in these findings.  Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record].

The limitations assigned by the ALJ account for Plaintiff's pain and other impairments as were documented in the record, and find substantial support in the medical evidence in this case; Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; and after a review of the decision and the record in this case, the undersigned does not find that the ALJ improperly considered and evaluated Dr. Walker's records or opinion as part his analysis of the overall record and evidence in this case, nor does the undersigned find that the ALJ failed to provide an explanation for his treatment of Dr. Walker's opinion.  Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence



and resolve conflicts in that evidence]; Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; see also Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

The record contains substantial evidence to support the findings and conclusions of the ALJ, and Plaintiff's argument that the ALJ committed reversible error by not accepting the extent of limitation opined to by Dr. Walker, or that he otherwise did not justify in his decision for why he was rejecting this opinion or cite to any other contrary evidence, is without merit.  Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; see Burch, 9 Fed.Appx. at 255 [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; see also Clarke, 843 F.2d at 272-273 ["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999) ['No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"].



### III.

Plaintiff also faults the ALJ's finding that her anxiety and depression did not render her impairments disabling until January 28, 2010. In his decision, the ALJ noted that it was not until January 28, 2010 that Plaintiff began receiving mental health treatment from Dr. Dana Wiley, a psychiatrist. (R.p. 37). Dr. Wiley performed a psychiatric evaluation of the Plaintiff on January 28, 2010 (which is apparently the first time he had seen her), at which time Plaintiff complained of a depressed mood and told Dr. Wiley that she suffered panic attacks two to three times a week. She also complained of a history of depression dating back to when her father had passed away ten years earlier. Dr. Wiley found Plaintiff to be alert x 3 with no suicidal ideation, and he described her mood as being depressed, with a history of panic attacks in public (apparently per self-report of the Plaintiff). As a result of this evaluation, Dr. Wiley assessed Plaintiff with major depression, recurrent, and assigned her a GAF of 40.[10] (R.pp. 431-432). Dr. Wiley thereafter saw Plaintiff again on February 25, 2010 and April 22, 2010, where she continued to exhibit a depressed mood. (R.p.430).

On July 19, 2010, Dr. Wiley completed a Medical Source Statement in which he opined that Plaintiff had recurrent episodes of severe depression and panic attacks, which greatly reduced her ability to interact appropriately and consistently with others, and that her mental condition rendered her unemployable. (R.pp. 505-506). In an attached Psychiatric Review

---

[10]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 31-40 indicates 'some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood.'" Kirves v. Callahan, No. 96-5179, 1997 WL 210813 at **2 (6th Cir. Apr. 25, 1997).



Technique Form, Dr. Wiley opined that Plaintiff's depressive syndrome resulted in pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, difficulty concentrating or thinking, as well as hallucinations, delusions or paranoid thinking, while her anxiety disorder resulted in recurrent severe panic attacks. (R.pp. 507, 510, 512). Dr. Wiley concluded that Plaintiff's condition resulted in her being markedly restricted in all functional areas, and would even result in three episodes of decompensation (time period unspecified), each of an extended duration. (R.p. 517). In a separate statement dated that same date, Dr. Wiley further opined that the limitations and opinions reflected on the Psychiatric Review Technique Form and Medical Source Statement had been present since at least July 22, 2008. (R.p. 504).

In his decision, the ALJ accepted Dr. Wiley's findings as of January 28, 2010 based on Dr. Wiley's findings and conclusions from his examination of the Plaintiff that day. (R.pp. 44-45). See Craig, 76 F.3d at 589-590 [noting importance of treating physician opinions]. However, the ALJ gave little weight to Dr. Wiley's opinion as it related to the period before January 28, 2010 (the first time he had ever seen the Plaintiff), noting that Dr. Wiley had no knowledge of Plaintiff's mental health prior to his initial assessment of the Plaintiff on that date, and that the medical record prior to that date did not reflect any mental impairment of a disabling severity. (R.pp. 40-41, 45-46). Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; see also Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]. Plaintiff complains that in light of Dr. Wiley's opinion, the ALJ should have obtained additional medical evidence in an attempt to establish when her mental



impairment became disabling, which Plaintiff contends predates January 28, 2010. However, the ALJ *did* have medical evidence of Plaintiff's mental condition prior to that date.

The ALJ noted in his decision that, although the record does contain general complaints by the Plaintiff at various times that she was experiencing anxiety or was depressed, that she continued to work a full time job even after the date that Dr. Wiley opines her mental impairment rendered her disabled; cf. Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability]; that there were few, if any, objective clinic signs referenced in the treatment notes to substantiate diagnoses of depression and anxiety, and that even Dr. Walker consistently indicated that plaintiff's mental and cognitive limitations and restrictions were within normal limits. (R.pp. 28, 35, 177, 297-315, 317, 377-379, 447, 468-470, 486-499). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)[the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].

The ALJ also noted that Plaintiff had a consultative mental status examination performed by Dr. David Massey on May 22, 2009, who opined following the examination that although the Plaintiff did have a depressive disorder, not otherwise specified, she did not have the full compliment of symptoms that would suggest major depression, and that given her mental status, her activities of daily living, and her symptoms, she was capable of working a full day without significant interruptions from her symptoms. (R.pp. 36, 351-353). Notably, this examination was actually performed during the relevant time period, not afterward as was the case with Dr. Wiley's examination, and to that end the ALJ gave great weight to Dr. Massey's conclusions prior to the



established onset date. (R.p. 41). <u>Richardson v Perales</u>, 402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability].

Finally, the ALJ also noted the opinion of state agency psychological consultant Dr. Craig Horne, who after a review Plaintiff's medical records through June 16 2009, concluded that Plaintiff did not have a severe mental impairment, as well as the opinion of a second state agency psychological consultant, Dr. Gary Calhoun, had also opined that as of September 22, 2009, Plaintiff did not have any severe mental impairment. (R.pp. 36, 355-368, 397-410). The ALJ accepted the opinions of these state agency psychological consultants, as there was objective evidence and admissions from the Plaintiff in support of their findings, with no contradictory treating or examining opinions or findings from physicians who had actually examined or treated the Plaintiff during that time period. (R.p. 46). <u>Smith</u>, 795 F.2d at 345 [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. The ALJ concluded that Dr. Wiley's conjecture that Plaintiff had been disabled since July 22, 2008 because of depression and anxiety was not supported by the medical evidence, a conclusion which finds substantial evidence in the case record discussed hereinabove. <u>Hays</u>, 907 F.2d at 1456 ["If there is evidence to justify refusal to direct a verdict [for the Plaintiff] were the case before a jury, then there is 'substantial evidence'"]; <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

Plaintiff's argument that the ALJ should have obtained even more medical evidence with respect to Plaintiff's mental condition prior to January 28, 2010 is without merit. See <u>Stephens v. Heckler</u>, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient



to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]; <u>Bowen</u>, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]; <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; <u>see</u> <u>also</u> <u>Smith</u>, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

## IV.

Plaintiff also complains that the ALJ did not properly evaluate her obesity, specifically noting that SSR 02-01p indicates that obesity can result in a variety of functional limitations, including postural limitations, fatigue and an inability to function over time. However, in addition to finding that Plaintiff's obesity was a severe impairment, the decision reflects that the ALJ also addressed the functional limitations that can be affected by this condition in reaching his decision. The claim is therefore without merit.

Specifically, the ALJ noted that Plaintiff's severe impairments in combination (which includes her obesity) limited her exertional ability to lift or carry in general as well as to perform certain postural activities. (R.p. 18). He also noted the lack of evidence of any vascular or coronary disease, that there was not any consistent evidence that Plaintiff could not ambulate effectively, that Plaintiff had a normal gait, that physical examinations showed Plaintiff to be neurologically intact, that Plaintiff was able to perform light work with certain postural limitations, that she generally received conservative treatment for her complaints, and that Plaintiff was able to engage in a variety



of daily activities to include walking, shopping, and housekeeping activities such as cleaning and doing the laundry.  (R.pp. 20, 26, 29, 31, 34-35).  All of these conditions address the possible limiting effects of Plaintiff's obesity.  Cf. Fagan v. Astrue, 231 Fed.Appx. 835, 837-838 (10th Cir. July 3, 2007); see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(a6) ["inability to ambulate effectively means an extreme limitation of the ability to walk"]; see also Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that she has a disabling impairment].

The ALJ also specifically discussed his consideration of the combined effect of Plaintiff's obesity with her other impairments, and stated that he had considered the effects of Plaintiff's obesity on her Residual Functional Capacity in accordance with SSR 02-01p.  (R.pp. 20-21).  Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009)[Noting well established principle of taking ALJ at his word when he indicates he considered all of the evidence].  The ALJ's decision reflects a thorough review of the evidence and record in this case, and his findings are based on the entire record.  Plaintiff's argument that the ALJ failed to properly consider her obesity in reaching his decision, or that the ALJ should have gone into even more detail in his reaching his decision, is without merit.  Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991) [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; see Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular



conclusion"]; <u>Fagan</u>, 231 Fed.Appx. at 837-838.

## V.

With respect to Plaintiff complaint that the ALJ failed to discuss or consider the side effects her medications had on her ability to work, the ALJ specifically referenced in his decision that he had considered any side effects of medications as part of his overall consideration of Plaintiff's claimed symptoms and limitations in reaching the RFC assigned in the decision. (R.p. 25). The ALJ further discusses the treatment Plaintiff received for her complaints, that she had taken various medications including Prednisone, Lyrica, as well as other medications, that she had received epidural steroid injections, as well as comments from physicians that Plaintiff was "very active" despite her complaints of pain and the prescriptions she had, that Plaintiff had advised medical personnel that her combination of medications was working well, that Plaintiff would receive periodic adjustments to her medications based on her symptoms and complaints, that there was no definitive evidence that her dermatological condition or hair loss were side effects of any medication, and that notwithstanding all of the medication she was on she continued to be able to engage in a variety of activities. <u>See generally</u>, (R.pp. 23-24, 26-29, 31-32, 34-36). <u>Cf</u>. <u>Johnson</u>, 434 F.3d at 658 [Finding that ALJ logically reasoned that claimants ability to engage in a variety of enumerated activities was inconsistent with her claim of disabling side effects from medication]. The ALJ also found that no treating physician had ever confirmed that Plaintiff gained weight as a result of her various treatments and medications. (R.p. 38). Finally, the ALJ noted that although Plaintiff surmised at her hearing that some of her overall poor feeling was due to the side effects of medications, that the record did not reflect that Plaintiff had complained of side effects from



medication.  (R.pp. 24, 28, 87).

In sum, the decision does not reflect that the ALJ failed to consider the side effects of Plaintiff's medications in his evaluation of her RFC, and the undersigned finds this claim of error to be without merit.

## VI.

Plaintiff's final assertion of error is that the ALJ failed to provide the Vocational Expert with a hypothetical which incorporated all of her limitations.  However, the record reflects that the ALJ asked the VE at the hearing whether an individual with the RFC set forth in the decision could perform gainful activity, in response to which the Vocational Expert testified to a number of jobs an individual could perform with those limitations.  (R.pp. 89-91).  Although in response to further questioning from Plaintiff's attorney, who included additional limitations not found by the ALJ in a hypothetical, the VE testified that Plaintiff would not be able to work with those limitations, those were not the limitations found by the ALJ in his decision.  <u>See</u> (R.pp. 92-97).

While Plaintiff may disagree with the findings of the ALJ, the Court has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable case law.  Hence, the hypothetical given by the ALJ to the Vocational Expert was proper, and the Court finds no grounds in the ALJ's treatment of the Vocational Expert's testimony for reversal of the final decision of the Commissioner.  <u>Lee</u>, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his hypothetical question that he finds are not supported by the record]; <u>see also</u> <u>Martinez v. Heckler</u>, 807 F.2d 771, 773 (9th Cir. 1986).



## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is **Ordered** that the decision of the Commissioner is **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 11, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

