**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| ANNIE M. RHOLETTER, ) | |
| ) | No. 9:12-cv-02341-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on Magistrate Judge Bristow Marchant's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Carolyn Colvin's decision denying plaintiff's application for additional disability insurance benefits ("DIB"). Plaintiff filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A.    Procedural History

Plaintiff Annie M. Rholetter ("Rholetter") filed an application for DIB on February 27, 2009, alleging disability beginning on October 16, 2008. The Social Security Agency denied Rholetter's claim initially and on reconsideration. Rholetter requested a hearing before an administrative law judge ("ALJ"), and ALJ Ivar E. Avots

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this lawsuit.

1

held a hearing on August 20, 2010. The ALJ issued a partially favorable decision on September 23, 2010, finding Rholetter not disabled prior to January 28, 2010 and disabled after that date. Rholetter requested Appeals Council review of the ALJ's decision. The Appeals Council declined to review the decision, rendering the ALJ's decision the final action of the Commissioner.

On August 15, 2012, Rholetter filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on December 11, 2013, recommending that this court affirm the ALJ's decision. Rholetter filed objections to the R&R on December 17, 2013 and the Commissioner responded to Rholetter's objections on January 3, 2014. The matter is now ripe for the court's review.

**B.     Medical History[2]**

Rholetter was born on July 8, 1966 and was 42 years old at the time she filed for DIB. Tr. 101. She did not complete high school but later obtained her GED. Tr. 82. Until 2008, Rholetter was the head custodian at a school where she lifted over fifty pounds on a frequent basis and supervised five people. Tr. 168-69.

Prior to July 22, 2008, Rholetter sought treatment from Dr. Herbert P. Cooper, Jr., Dr. Aaron McDonald, Dr. Eric Loudermilk, and Dr. James H. Walker for complaints of pain, numbness, and tingling in her neck, shoulder, left arm, left hand, and low back, as well as for headaches, dizziness, and chest pain. See Tr. 25-27 (ALJ's review of Rholetter's medical records).

On July 22, 2008, Rholetter was injured at work. Tr. 64. She was talking with some coworkers when a mentally challenged employee grabbed a floor buffer and came

---

[2] The court dispenses with a recitation of facts concerning Rholetter's mental health because those facts are not relevant to the issues raised by her objections.

up behind Rholetter, chopping her "down like a tree." Id.  Rholetter testified that her feet went up in the air, her head and back hit the concrete wall, and she then hit the floor.  Id.  Rholetter saw Dr. Loudermilk after the accident, telling him that she was still maintaining full-time employment, her headaches were manageable, her combination of medications was working well, and that she did not feel that her neck pain was severe enough to warrant epidural steroid injections.  Tr. 309.  In September 2008, Rholetter told Dr. Walker that she was having "lots of pain in her neck and left shoulder" and he noted decreased range of motion.  Tr. 321-22.

In late September and October 2008, Rholetter received a series of three steroid injections "with some benefit," although her headaches did not improve.  Tr. 301-06.  In November 2008, Dr. Loudermilk ordered an MRI of her brain, but Rholetter wanted to "hold off" on seeing a neurologist.  Tr. 201.  The MRI was unremarkable except for some sinus issues.  Tr. 300.  In December 2008, Dr. Loudermilk referred Rholetter to a neurologist for an evaluation of her chronic headaches.  Id.  That same month, Dr. Walker reported that Rholetter's extremities were normal, her neurological functions were intact, and there was no evidence of inflammatory joint disease, but noted that her left leg was dragging and she had weakness in her left hand.  Tr. 319.

In January 2009, an MRI of Rholetter's neck and back showed some disc bulges in her neck which could cause "some nerve root irritation to the left without definite compromise."  Tr. 382-83.  Dr. H. Dean Reeves, II, performed a nerve conduction study which showed borderline nerve disease in her left elbow but was otherwise normal.  Tr. 288-89.  Dr. Reeves recommended "no further neurological workup" at that time.  Tr.

290. In January and February 2009, Dr. Loudermilk administered a series of facet joint injections. Tr. 297-98.

On February 12, 2009, Dr. Walker submitted a form to Rholetter's long-term disability insurance carrier indicating that she could not work as of October 2008 and would never be able to return to work. Tr. 468-69. At a visit on that same date, Dr. Walker reported that Rholetter had back and neck pain. Tr. 316-17. He also reported "no evidence of radiculopathy is seen at this time." Tr. 317.

Rholetter returned to Dr. Loudermilk in March 2009 complaining of continued left-side neck and shoulder pain and chronic headaches. Tr. 379. She stated that she felt better after the facet joint injections but that the pain returned. Id. Dr. Loudermilk prescribed medication for her headaches and neck pain. Id. In May 2009, Rholetter reported to Dr. Loudermilk that medication was helping and "this combination of medications is working the best for her [compared to] previous medication regimens." Tr. 378. That same month, Dr. Walker filled out a form on which he indicated that Rholetter had a "disability" and instructed that she should do "no pushing, lifting, or pulling." Tr. 350.

Also in June 2009, state agency medical consultant Dr. William Hopkins reviewed Rholetter's medical records and opined that she was capable of performing light work with additional limitations including: only frequent reaching in all directions with her left arm; never balancing; only occasionally performing other postural activities; limited pushing and pulling with her left arm; and no exposure to workplace hazards. Tr. 369-75. Dr. Hopkins noted Dr. Walker's comments regarding left side weakness, but gave greater weight to the findings of Drs. Loudermilk and Reeves. Tr. 374.

An MRI performed on Rholetter's left shoulder in August 2009 revealed that Rholetter had partial tear of her shoulder tendon, mild osteoarthritis, and a "tiny amount" of bursitis. Tr. 380. There was no evidence of a rotator cuff tear. Id. Rholetter saw Dr. Brian Redmond, who opined that her shoulder issues were not the primary source of her pain. Tr. 429. He prescribed some selective injections to "try to sort out how much pain is coming from the shoulder" and determined that the pain was likely coming from her left elbow nerve issues. Tr. 428-29. In October 2009, Rholetter had surgery on her left elbow. Tr. 422-23. Shortly thereafter, she was "doing well" and "[a] lot of her pain [had] already diminish[ed]." Tr. 421.

In October 2009, state agency medical consultant Dr. Alfred Moore reviewed Rholetter's medical records and concluded that she was capable of performing light work with additional limitations. Tr. 411-18. Dr. Moore concluded that Rholetter could: occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand or walk for a total of six hours in an eight-hour work day; sit for about six hours in an eight-hour work day; occasionally kneel and crouch; frequently reach overhead; and never climb ladders, ropes, or scaffolds. Tr. 412-13. Dr. Moore noted Dr. Walker's records regarding Rholetter's limitations, but gave greater weight to the findings of Drs. Loudermilk and Reeves, as well as Rholetter's statements regarding her ability to perform light household chores, cook, drive, and shop for her family. Tr. 417.

In December 2009, Rholetter saw Dr. Redmond and complained of neck and shoulder pain. Tr. 420. Dr. Redmond noted that although the pain in her arm had gotten better, the numbness in her arm had not gotten better and the pain in her neck and

5

shoulder was overshadowing her arm problems.  Id.  Later that month, Dr. Walker reported that Rholetter was "doing fairly well" but had numbness in her feet.  Tr. 440.

In January 2010, Dr. Carol W. Burnette noted that Rholetter maintained her balance during tandem walking, heel walking, and toe walking.  Tr. 494.  Dr. Burnette did note that Rholetter had some tenderness in her head and neck, her cervical rotation was mildly restricted, her cervical flexion and extension were mildly restricted and also painful, and she had painful restricted range of motion in her shoulder.  Id.  Dr. Burnette also assessed increased numbness and tingling in both of Rholetter's feet.  Id.

In August 2010, Dr. Walker filled out a "medical source statement (physical)" regarding Rholetter's impairments.  Tr. 522-25.  Dr. Walker opined that "from [the] 1980's to present," Rholetter could:  occasionally lift more than ten pounds; never frequently lift any amount; stand or walk for one hour in an eight-hour work day and for thirty minutes without interruption; sit for five hours in an eight-hour work day and for one hour without interruption; occasionally balance; rarely stoop or kneel; never climb or crawl; frequently feel; occasionally handle; rarely reach, push, or pull; rarely be exposed to moving machinery, dust, noise, humidity, or vibration; and never be exposed to heights, temperature extremes, chemicals, or fumes.  Tr. 522-24.  Dr. Walker indicated that his opinions were confirmed by objective findings and not based primarily on Rholetter's subjective complaints.  Tr. 525.

### D.     ALJ's Decision

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Rholetter was disabled from October 16, 2008 through September 23, 2010.  The ALJ first determined that Rholetter did not engage in substantial gainful

6

activity during the period at issue.  Tr. 17.  At the second step, the ALJ found that since October 16, 2008, Rholetter suffered from the following severe combination of impairments:  cervical degenerative disc disease and facet hypertrophy, partial supraspinatus tear versus tendinopathy of the upper back and neck, degenerative disc disease of the lumbar spine, headaches, ulnar neuropathy of the left elbow, left subacromial joint bursitis, and obesity.  Tr. 18.  The ALJ found that beginning on January 28, 2010, Rholetter additionally had the following severe combination of impairments:  depression and anxiety.  Id.  At step three, the ALJ determined that prior to January 28, 2010, Rholetter's impairments or combination of impairments did not meet or equal one of the listed impairments in the Agency's Listing of Impairments ("the Listings").  Tr. 21; see 20 C.F.R. Part 404, Subpt. P, App'x 1.  However, the ALJ determined that beginning January 28, 2010, Rholetter's impairments met the criteria of Listings 12.04 and 12.06.  Tr. 43; see 20 C.F.R. Part 404, Subpt. P, App'x 1.  The ALJ accordingly determined that Rholetter was disabled beginning on that date.  Tr. 46.

Before reaching the fourth step, the ALJ determined that prior to January 28, 2010, Rholetter had the residual functional capacity ("RFC") to perform a wide range of light work, as defined by 20 C.F.R. §404.1567(b).  Tr. 21.  Specifically, the ALJ found that Rholetter could:  occasionally lift and carry twenty pounds at a time and frequently lift and carry ten pounds at a time; sit, stand, and walk for up to six hours each during an eight-hour work day; push and pull frequently with the left upper extremity; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel with the left upper extremity, with no limitation on the right dominant upper extremity; and never be exposed to hazards.  Id.

The ALJ found, at step four, that Rholetter was unable to perform any of her past relevant work. Tr. 42. Finally, at the fifth step, the ALJ found that prior to January 28, 2010, Rholetter could perform jobs existing in significant numbers in the national economy and therefore concluded that she was not disabled prior to January 28, 2010. Id.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

### III.  DISCUSSION

Rholetter objects to the R&R on three grounds:  (1) the ALJ erred in requiring objective medical evidence of the severity of her pain; (2) the ALJ erred in failing to truly consider that her persistent efforts to obtain pain relief enhanced her credibility; and (3) the ALJ erred by not evaluating the opinion of her treating physician.  The court considers each objection in turn.

#### A.  Credibility Determination

Rholetter's first two objections concern the ALJ's credibility determination.

Determining whether an individual is disabled by pain or other symptoms is a two-step process.  First, an ALJ must determine whether a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged.  See 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 96–7p; Craig, 76 F.3d 585, 591-96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain."  Craig, 76 F.3d at 594 (internal quotation omitted).  Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work."  Id. at 595.  This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be

disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p.

If an ALJ rejects a claimant's testimony about her pain or physical condition, he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

When considering whether an ALJ's credibility determination is supported by substantial evidence, the court does not replace its own credibility assessment for that of the ALJ; rather, the court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusion. Coleman v. Astrue, 2011 WL 3924187, at *15 (S.D. W. Va. Sept. 7, 2011); see Hays, 907 F.2d at 1456 (holding that in reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner). Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

At the first step, the ALJ found that Rholetter's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 25. However, at step two, the ALJ determined that Rholetter's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to January 28, 2010." Id.

### 1.     Objective Medical Evidence

Rholetter's first objection to the R&R is that the magistrate judge erred by failing to recognize that the ALJ improperly required objective medical evidence of the severity of her pain. Pl.'s Objections 2.

"If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability." Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir. 2006). That is, the "absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id. at 565 (emphasis omitted). However, "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment . . . ." Craig, 76 F.3d at 595. In general, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p. "This includes the medical signs and laboratory findings, the individual's own statements about

11

the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Id.

The ALJ in this case properly considered the objective evidence. Tr. 37; see Hines, 453 F.3d at 564 ("Objective medical evidence of pain, its intensity or degree . . . , if available, should be obtained and considered."). In doing so, the ALJ determined that Rholetter's allegations of pain were inconsistent with the objective evidence:

> [E]ven with the claimant's assertions, for the most part, the objective medical evidence, including the diagnostic imaging, was relatively normal. Claimant was evaluated using multiple x-rays, MRIs, at least one EEG, multiple EKGs, nerve conduction studies, bone density scans, and others; however, despite these diagnostic tools, and examination and treatment by numerous specialists, the record contains very little objective evidence to substantiate the alleged severity of the claimant's complaints.

Tr. 37. Thus, the ALJ found that the "relatively normal objective evidence in comparison to the extremely abnormal subjective complaints," inconclusive diagnoses, and incongruities between alleged symptoms, objective findings, and recommended treatments "all serve to discredit the claimant's contention that she was disabled since the alleged onset date." Id.

Next, the ALJ, acknowledging that "the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative," found that "several factors unrelated to the presence or absence of objective evidence detract from the claimant's credibility." Tr. 37. The ALJ cited Rholetter's admission that she receives benefits from a private long-term disability carrier and noted that such carriers often require recipients to concurrently file an application for Social Security benefits. Tr. 37.

While Rholetter argues that this does not detract from her credibility, Pl.'s Resp. Br. 4, the ALJ provides additional reasons to discount her credibility.

The ALJ found that Rholetter's concern that she could only be hired at a job making much less money "suggest[s] that [her] motivation for filing a disability claim is related more with the unfortunate circumstance that she could not perform her previous job rather than with a belief that she was totally disabled from any substantial gainful activity." Tr. 37-38. The ALJ noted that while Rholetter testified that she uses a cane, the record lacks a prescription or recommendation for a cane and she attended the hearing without one. Tr. 38. Additionally, the ALJ noted that Rholetter's testimony suggested the possibility that her physician's disability statements may be overly sympathetic and cited evidence that Rholetter "might have a tendency to exaggerate her symptoms." Id.

While the ALJ properly <u>discussed</u> objective medical evidence, he did not <u>require</u> objective medical evidence. The ALJ carefully considered Rholetter's subjective complaints of pain, objective medical record, and the entire case record in reaching a conclusion regarding her credibility. Therefore, the court finds that the ALJ did not improperly require objective medical evidence and that his credibility determination is supported by substantial evidence.

Rholetter's first objection fails.

### 2.     Efforts to Obtain Pain Relief

Rholetter's second objection to the R&R is that the magistrate judge failed to acknowledge that her persistent efforts to obtain pain relief enhanced her credibility regarding the severity of her pain. Pl.'s Objections 5.

> "[A] longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."

SSR 96-7p. "Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms." Id.

In his decision, the ALJ noted that "a review of the claimant's medical records through January 28, 2010, shows that claimant was treated and evaluated on numerous occasions for rather consistent complaints, which adds to the claimant's credibility." (Tr. 37) (emphasis added). While Rholetter acknowledges that the ALJ analyzed her effort to obtain relief and found it supported her credibility, she argues that the ALJ erred by not giving "great weight" to her longitudinal medical record. Pl.'s Objections 6. Rholetter's objection is essentially an invitation to the court to reweigh the evidence and come to its own conclusion. Such reweighing of the evidence is not within the province of this court. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

Rholetter's second objection fails.

### B.     Treating Physician Opinion

Rholetter's third objection to the R&R is that the magistrate judge failed to find that the ALJ erred by not evaluating the expert opinion of Dr. Walker, her treating physician. Pl.'s Objections 7.

Regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors: (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines, 453 F.3d at 563. However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons

15

for his decision." Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see also § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion). A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

The ALJ made several determinations in affording Dr. Walker's opinion little weight. First, he noted that none of the other specialists indicated that Rholetter was disabled at any point because of physical impairment. Tr. 39. This includes Dr. Loudermilk, with whom Rholetter has a lengthy treatment record. Id. Next, the ALJ noted that Dr. Walker's opinions lacked any explanation or citation to supporting objective evidence. Id. On four occasions, Dr. Walker indicated that Rholetter was disabled and unable to lift, push, or pull. See Tr. 350, 467, 468-69, 525-29. The ALJ noted that in these four statements, Dr. Walker provided only one objective clinical sign to support his conclusion – in his February 12, 2009 statement regarding Rholetter's application for long-term disability benefits, he noted that she had clinical signs related to rheumatoid nodules of the feet and hands. Tr. 39; see Tr. 468-69. As the ALJ pointed out, this clinical sign does not concern Rholetter's most often-repeated symptoms related to her neck, left shoulder, left arm, low back, or headaches. Tr. 39.

The ALJ also found that Dr. Walker's opinions were not supported by his own treatment records. Tr. 39. On a number of occasions, Dr. Walker noted relatively normal

examinations.  See Tr. 319, 322, 325, 327, 390.  The ALJ noted that in some cases, Dr. Walker's notes are internally inconsistent.  Tr. 39.  The ALJ cites Dr. Walker's December 29, 2008 examination, during which he noted that Rholetter dragged her left leg while walking.  Tr. 319.  However, in the same note Dr. Walker indicated that his examination of Rholetter's extremities was normal, she was neurologically intact, and she had no evidence of any sort of inflammatory joint disease.  Id.  The ALJ also notes that on May 14, 2009, Dr. Walker indicated that Rholetter's extremities were within normal limits and that she was neurologically intact, Tr. 390, but that one week later he provided a statement the she could not lift, push, or pull objects over ten pounds.  Tr. 350.  The ALJ also points out that Dr. Walker noted symptoms, such as Rholetter dragging her left leg while walking, that no other physician recorded.  Tr. 39; see Tr. 319.

　　　　The ALJ gave good reasons – inconsistency with other physicians' opinions, inconsistency with his own treatment records, and lack of thorough explanation for his conclusions – for discounting Dr. Walker's opinion.  Moreover, there is no indication that the ALJ dredged up specious inconsistencies in discounting Dr. Walker's opinion.  Therefore, the court finds that the ALJ's determination that Dr. Walker's opinion is entitled to little weight is supported by substantial evidence.

　　　　Rholetter's third objection fails.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

                                                            _____
                                                            **DAVID C. NORTON**
                                                            **UNITED STATES DISTRICT JUDGE**

**February 27, 2014**
**Charleston, South Carolina**